ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2010 JUL 29 PM 2:57
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ROY JAMES SANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 310-040 |
| ) | |
| BRIAN OWENS, Commissioner of the ) | |
| Georgia Department of Corrections; TONY ) | |
| WASHINGTON, Warden; FNU GOTEL, ) | |
| Officer; FNU GREEN, Officer; ) | |
| FNU AUSTEN, Doctor; FNU HALL, ) | |
| Nurse; and FNU HARRY, Doctor, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on June 9, 2010, the Court reviewed Plaintiff's complaint in conformity

---

[1] At the time of the events forming the basis of the complaint, Plaintiff was incarcerated at Johnson State Prison ("JSP").

with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 7.) Plaintiff has submitted an amended complaint, (doc. no. 9), and it is this document that the Court will now screen.

I.  **SCREENING OF COMPLAINT**

Plaintiff brings claims in his amended complaint against: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections, (2) Tony Washington, the Warden at JSP, (3) FNU Gotel, an Officer at JSP, (4) FNU Green, an Officer at JSP, (5) FNU Austen, a doctor, (6) FNU Hall, a nurse at JSP, and (7) FNU Harry, a doctor. (Doc. no. 9.) Plaintiff maintains that he had a lower bunk safety profile. (Id. at 5.) On August 27, 2009, Plaintiff was moved to a different dorm and was assigned a top bunk. (Id.) Defendant Green was the officer of the CERT Team who moved Plaintiff. (Id.) Plaintiff states that he showed Defendant Green his lower bunk safety profile. (Id.) However, Defendant Green allegedly told Plaintiff that if he did not take the top bunk, he would be placed in the "hole." (Id.) Plaintiff took the top bunk. (Id.)

According to Plaintiff, on September 4, 2009, he fell off the top bunk. (Id.) The security officer called the medical team; when Nurse Hall arrived, Plaintiff was still lying on the ground. (Id.) According to Plaintiff, Defendant Hall noted that he should have x-rays taken. (Id.) However, Plaintiff asserts that Defendant Gotel, an officer with the CERT Team stated that Plaintiff "was fine" and did not need any x-rays. (Id.) Nonetheless, Plaintiff was taken to "Medical," where he was treated by a nurse. Plaintiff complains that the nurse who treated him only took his blood pressure. (Id.) From "Medical," Plaintiff was taken to the "hole" where he stayed for three days. (Id.)

2

Plaintiff maintains that he was in constant pain and continuously requested to be examined by a doctor, but his request was refused. (Id. at 5-6.) Plaintiff provides that on December 10, 2009, he was x-rayed, and that on December 16, 2009, he was seen by Defendant Harry. (Id. at 6.) According to Plaintiff, Defendant Harry informed Plaintiff that the x-rays revealed that Plaintiff had four broken ribs and a bruised spine. (Id.) Plaintiff states that since January 1, 2010, he has only been provided pain medication and a walking cane. (Id.) He complains that he has not yet been examined by Defendant Austen. (Id.) As to Defendant Washington, Plaintiff provides that he, as the Warden, received the formal grievances Plaintiff had filed regarding his request to be seen by a doctor, and was aware of Plaintiff's request. (Doc. no. 9, p. 6.) Plaintiff alleges that Defendant Washington told him that Defendant Austen was aware that Plaintiff had fallen off the top bunk. (Id.) Finally, Plaintiff claims that "everyone at [JSP] works under Defendant Owens." (Id.) Plaintiff seeks injunctive and monetary relief. (Id. at 7.)

## II. DISCUSSION

### A. Claims Against Defendants Hall, Harry, and Austen

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that his complaint fails to state a claim for relief against Defendants Hall, Harry, and Austen. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

Here, Plaintiff does not allege any facts of wrongdoing against Defendants Austen, Hall, and Harry. Vague and conclusory allegations are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). Indeed, Plaintiff never explains how these Defendants actions amount to a violation of Plaintiff's constitutional rights. Indeed, Defendant Hall provided Plaintiff with care and recommended that he be given x-rays.[2] Plaintiff acknowledges after Defendant Hall examined him, that he was taken from his cell to "Medical." (Id. at 5.) Plaintiff then explains that while he was at "Medical" a different nurse treated him, but she only took his blood pressure. (Id.) This second nurse's actions or lack thereof cannot be imputed to Defendant Hall. Similarly, when Plaintiff was examined by Defendant Harry, he (Defendant Harry), informed Plaintiff that the x-rays revealed that he had broken ribs and a bruised spine. (Id. at 6.) The Court acknowledges Plaintiff's complaint that he kept asking to see a doctor but was refused. (Id. at 5.) However, Plaintiff does not indicate to whom he made such requests, and more importantly, he does not allege that Defendant Harry ever refused to see him. As such, Plaintiff does not attribute any wrongdoing to Defendant Harry. Finally, Plaintiff's only claim against Defendant Austen is that he has not been examined or treated by this doctor. (Id. at 6.) There is no constitutional right to be treated by a specific doctor, and Plaintiff himself acknowledges that he was treated by Defendant Harry and other medical staff.

Thus, Plaintiff does not allege any wrongdoing by these three Defendants, let alone

---

[2]According to Plaintiff, it was Defendant Gotel, a security officer with the CERT Team, who told Defendant Hall that Plaintiff was "fine, we don't need [x-rays.]" (Doc. no. 9, p. 5.)

4

that they contributed to any of Plaintiff's claims concerning deliberate indifference. Thus, in the absence of an allegation of a connection between the actions of Defendants Hall, Harry, and Austen with any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants, and they should be dismissed.

### B. Claims Against Defendant Gotel

*Liberally* construing Plaintiff's allegations against Defendant Gotel in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that he fails to state a claim for deliberate indifference. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and

5

look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To state a viable Eighth Amendment claim, Plaintiff must show that the defendant acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, Plaintiff has not met the two-pronged test described above. The extent of Plaintiff's allegations against Defendant Gotel, is that this Defendant claimed that Plaintiff did not need x-rays. First, Plaintiff does not explain how Defendant Gotel, an officer on the CERT Team, was responsible for Plaintiff's medical care. Second, and more importantly, even though Defendant Gotel stated that Plaintiff did not require x-rays, Plaintiff acknowledged that he was taken to "Medical" and was examined by a nurse. Plaintiff simply does not explain how Defendant Gotel's statement had any bearing on his medical treatment. As such, Plaintiff fails to state a claim for deliberate indifference against Defendant Gotel, and he should be dismissed.

### C.    No Respondeat Superior

To the extent that Plaintiff may be trying to blame Defendant Washington and Owens for the acts of their subordinates for the alleged constitutional violations, his claims fail.

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, the only mention of Defendant Owens is "everyone works under [him]," nowhere does Plaintiff mention that Defendant Owens actually participated in any purported constitutional violation. As to Defendant Washington, Plaintiff only provides that he, as the Warden, received the formal grievances Plaintiff had filed regarding his request to be seen by a doctor, and was aware of Plaintiff's request. (Doc. no. 9, p. 6.) Plaintiff alleges that Defendant Washington told him that Defendant Austen was aware that Plaintiff had fallen off the top bunk. (Id.) Importantly, however, Plaintiff does not claim that Defendant Washington participated in the alleged constitutional violation.

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d

397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[3] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that Defendants Washington and Owens knew about any widespread abuse or that they were responsible for a custom or policy of disregarding low bunk safety profiles or failing to provide medical treatment.[4] In sum,

---

[3]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[4]While Plaintiff has stated that Defendant Washington knew about his conditions and did nothing to correct them, Plaintiff does not satisfy his burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims simply by alleging that he filed a grievance with Defendant Washington. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Plaintiff has failed to state a claim upon which relief may be granted against Defendants Washington and Owens, and these Defendants should be dismissed.

### D. Injunctive Relief

Plaintiff seeks to be placed in a transition center for the purpose of having access medical treatment in the "free world." (Doc. no. 9, p. 7.) Even if Plaintiff were to succeed on his deliberate indifference claims, he is not entitled to his requested relief. Inmates do not have a constitutional right to be housed at one facility or another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). Indeed, having considered the issue of involuntary prisoner transfers, the Supreme Court found no constitutional liberty interest in the involuntary transfer of an inmate to a different facility. Montanye v. Haymes, 427 U.S. 236, 242-43 (1976). Thus, Plaintiff has no right to be housed at any particular institution and therefore he is not entitled to injunctive relief. Therefore, Plaintiff's request for injunctive relief should be dismissed.

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants Hall, Harry, Austen, Gotel, Washington, and Owens, as well as Plaintiff's request for injunctive relief, be **DISMISSED**.[5]

SO REPORTED and RECOMMENDED this 29th day of July, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendant Green based on Plaintiff's Eighth Amendment claim for deliberate indifference.

9