IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROY JAMES SANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-040 |
| | ) | |
| CYNTHIA GREEN,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Wheeler Correctional Facility in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[2] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). This case is now before the Court on Defendant's "Pre-Answer Motion to Dismiss." (Doc. no. 20.) Plaintiff opposes the motion. (Doc. no. 23.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I. BACKGROUND

Plaintiff filed his original complaint on May 3, 2010. (Doc. no. 1.) The Court reviewed Plaintiff's original complaint in conformity with the IFP statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 7, pp.

---

[1] In her motion to dismiss, Defendant has made clear that her full name is Cynthia Green. (Doc. no. 20.) The **CLERK** is **DIRECTED** to modify the docket accordingly.

[2] At the time of the events forming the basis of the complaint, Plaintiff was incarcerated at Johnson State Prison ("JSP").

3-4.) Plaintiff filed his amended complaint on June 30, 2010. (Doc. no. 9.)

In his amended complaint, Plaintiff alleges that he had a lower bunk "safety profile." (Doc. no. 9, p. 5.) On August 27, 2009, Plaintiff was purportedly moved to a different dorm and was assigned a top bunk. (Id.) Plaintiff identifies Defendant as the officer of the CERT Team who moved Plaintiff. (Id.) Plaintiff states that he showed Defendant his lower bunk safety profile. (Id.) However, Defendant Green allegedly told Plaintiff that if he did not take the top bunk, he would be placed in the "hole." (Id.) Plaintiff took the top bunk. (Id.)

Plaintiff further alleges that on September 4, 2009, he fell off the top bunk. (Id.) Plaintiff states that he suffered injuries and was taken to "Medical," following which he was taken to the "hole," where he stayed for three days. (Id.) Plaintiff maintains that he was in constant pain during the period following his fall. (Id.) In addition, Plaintiff states in his amended complaint that he filed a "first grievance" and a second, "formal" grievance relating to these allegations. (Id.) Upon review of his amended complaint, the Court allowed Plaintiff to proceed with a § 1983 claim against Defendant for deliberate indifference to Plaintiff's health.[3] (Doc. no. 12.) After the resolution of service of process issues, Defendant filed her motion to dismiss.

## II. DISCUSSION

In the instant motion, Defendant argues that Plaintiff's amended complaint should

---

[3]The Court recommended that several former Defendants, along with Plaintiff's claim for injunctive relief, be dismissed. (Doc. no. 11.) The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation. (Doc. no. 14.) As the instant motion to dismiss concerns only Plaintiff's remaining claim against Defendant, the Court has not recounted Plaintiff's allegations regarding the former Defendants who have been dismissed from this case.

2

be dismissed for failure to exhaust administrative remedies, failure to state a claim, and because she is entitled to qualified immunity. (See generally doc. no. 20-1.) Defendant also argues that the Eleventh Amendment bars any official capacity claim that Plaintiff may be trying to assert, and that Defendant is not a person for purposes of § 1983 liability to the extent that Plaintiff has sued her in her official capacity. (Id. at 10-11.) In his opposition to Defendant's motion, Plaintiff argues that he has stated a viable Eighth Amendment claim by alleging that Defendant forced him to take the top bunk despite his poor physical condition and his bottom bunk safety profile.[4] (See generally doc. no. 23.) As explained below, the Court finds that Defendant is entitled to qualified immunity, and therefore finds it unnecessary to reach the other arguments in Defendant's motion.

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for

---

[4]In conjunction with his response to the motion to dismiss, Plaintiff requests for the second time that the Court appoint an attorney to represent him in this case. (Doc. no. 23, p. 3.) In a simultaneously issued order, the Court has denied Plaintiff's request for the appointment of counsel.

3

relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). With these principles in mind, the Court turns its attention to the instant motion.

### B. Defendant is Entitled to Qualified Immunity

Defendant contends that she is entitled to qualified immunity because she was acting within the scope of her discretionary authority during the relevant time period and because "Plaintiff cannot show that the law regarding [her] actions was clearly established" at the time of the incident. (Doc. no. 20, p. 9.) Plaintiff argues dismissal is inappropriate because he was forced into taking a top bunk despite his tendency to fall out of his bunk combined with his safety profile for a bottom bunk. (Doc. no. 23, p. 3.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within their discretionary authority, they must be "(1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting

Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). If the defendant shows that she was acting within her discretionary authority, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Furthermore, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, Defendant has satisfied the threshold requirement of showing that she was acting within the scope of his discretionary authority, as she was on-duty as a state prison employee during the relevant time period. See Lenz, 51 F.3d at 1545. The burden therefore shifts to Plaintiff to show that (1) Defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. Townsend, 601 F.3d at 1158. Notably, the Court is not required to analyze these requirements in any particular order, and

may exercise its discretion to find that qualified immunity attaches based on Plaintiff's failure to show clear establishment of the right without first finding that Plaintiff has stated a claim for the violation of that right. Pearson, 129 S. Ct. at 818.

Defendant is entitled to qualified immunity in this case because the right at issue was not clearly established at the time of the alleged violation. The Court is mindful that it has been established for some time that deliberate indifference to a prisoner's health and safety violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). However, this principle is not automatically dispositive of the qualified immunity analysis required here, as the determination of "whether a constitutional right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Vinyard v. Wilson, 311 F.3d 1340, 1349-50 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled on other grounds by* Pearson, 129 S. Ct. at 818). Factually similar cases from the relevant jurisdictions may be material to this determination, though prior cases need not demonstrate the unlawfulness of the challenged conduct in the exact same factual circumstance for qualified immunity to be overcome. See Hope v. Pelzer, 536 U.S. 730, 739 (2002). Rather, the issue here is whether the state of the law as of August 27, 2009, gave Defendant fair warning that requiring Plaintiff to take a top bunk despite his bottom bunk safety profile was unconstitutional. Id. at 741. Such warning may be found in light of prior case law or where the conduct at issue "was so obviously at the core of what the [Eighth] Amendment prohibits" that any reasonable officer would know it was unlawful. Vinyard, 311 F.3d at 1355 (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).

First, Plaintiff has not shown, and the Court is not aware of, any case in the United States Supreme Court, the Supreme Court of Georgia, or the Eleventh Circuit Court of Appeals in which a court has determined conduct such as Defendant's to be unconstitutional in these factual circumstances. To the contrary, in the most factually-analogous case decided by one of the above courts, the Eleventh Circuit affirmed summary judgment against a plaintiff on an Eighth Amendment deliberate indifference claim premised on a prison official requiring the plaintiff to take the top bunk despite having been shown the plaintiff's bottom bunk medical profile. Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007) (*per curiam*).[5]

Moreover, Plaintiff has not shown, and the Court is not aware of, any roughly analogous case law that would suffice to put Defendant on notice that her conduct was unconstitutional. The Court recognizes that a prison guard may violate the Eighth Amendment by "intentionally interfering with [medical] treatment once prescribed." Estelle, 429 U.S. at 105 & n.12; see also, e.g., Campbell v. Beto, 460 F.2d 765, 767 (5th Cir. 1972)[6]

---

[5]Defendant makes much of the unpublished Burley decision in her brief in support of her motion to dismiss, and incorrectly asserts that the court in Burley "concluded that the plaintiff failed to state a claim." (Doc. no. 20-1, p. 8.) In reality, the court in Burley affirmed the district court's decision at the summary judgment stage, and concentrated much of its analysis on the plaintiff's evidentiary shortcomings, such as his failure to meet his burden of showing a genuine dispute as to whether he had a serious medical need and whether the defendants were deliberately indifferent to such need. See 257 F. App'x at 210. Accordingly, the Court emphasizes that it does interpret Burley as establishing that a plaintiff necessarily fails to state a claim by alleging conduct such as Defendant's. Rather, the Court simply cites Burley as an example of the Eleventh Circuit's treatment of a factually similar case that illustrates the absence of a determination within the relevant case law that conduct such as Defendant's is clearly unconstitutional.

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit

(prison guard knew of prisoner's serious heart condition but failed to give him medicine prescribed by treating physician); Washington v. Dugger, 860 F.2d 1018, 1020 (11th Cir. 1988) (prison officials failed to administer prescribed medication needed to alleviate extreme pain).

However, the cases involving intentional interference with prescribed medical treatment are inadequate to show that Defendant had fair warning that her conduct amounted to unconstitutional deliberate indifference. Such cases characteristically involve a prison official's intentional refusal to follow a physician's prescription for medication needed to treat a known medical condition, as opposed to deviation from a "safety profile" regarding matters such as bunk assignments, especially where the reason behind the profile is not readily apparent. Compare Campbell, 460 F.2d at 767, and Washington, 860 F.2d at 1020, with Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) (no violation of Eighth Amendment where prison officials deviated from physician's instructions that inmate not be required to shave), and Burley, 257 F. App'x at 210 (failure to present evidence sufficient to prove Eighth Amendment claim where reason for bottom bunk profile not readily apparent to prison guard). Accordingly, the cases establishing that intentional interference with a prescription for medical treatment violates the Eighth Amendment were not sufficient to give Defendant fair warning that requiring Plaintiff to take the top bunk despite his bottom bunk profile constituted unconstitutional deliberate indifference.

Finally, in the absence of clearly established case law on point, the Court must ask whether Defendant's conduct was so obviously at the very core of what the Eighth

---

rendered prior to October 1, 1981.

Amendment prohibits that any reasonable officer would know it was unlawful. See Lee, 284 F.3d at 1199. "The Eighth Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Shabazz, 790 F.2d at 1986 (quoting Estelle, 429 U.S. at 102). Moreover, the Eighth Amendment's prohibition on cruel and unusual punishment concerns "the unnecessary and wanton infliction of pain." Id. In light of these quintessential Eighth Amendment concerns, the Court finds that Defendant's decision regarding Plaintiff's bunk assignment is not so obviously at the core of the Eighth Amendment's prohibition on cruel and unusual punishment that any objectively reasonable officer would understand it to be unconstitutional.

Therefore, the Court finds that the existing law in effect at the time of the events giving rise to this action would not make it apparent to a reasonable officer that requiring an inmate to take a top bunk despite a bottom bunk profile would violate an inmate's constitutional rights. Defendant is therefore entitled to qualified immunity, and her motion to dismiss should be granted.

The Court's determination on the issue of qualified immunity makes it unnecessary to address Defendant's other arguments for dismissal. Nevertheless, certain of those arguments warrant brief commentary. Two of the sections in Defendant's motion to dismiss concern the impropriety of official capacity claims for monetary damages. (See doc. no. 20-1, pp. 10-11.) However, Plaintiff has never indicated an intent to sue Defendant in her official capacity, and when the Court screened the amended complaint it did not sanction any official capacity claim. (See doc. nos. 9, 10, 12.) Given the absence of any indication of the existence of an official capacity claim, such arguments are entirely superfluous. Litigants

should not present unnecessary arguments that relate only to non-existent claims.

In addition, Defendant argues that Plaintiff's claim should be dismissed for failure to exhaust his administrative remedies. Specifically, Defendant asserts that Plaintiff failed to appeal the denial of his formal grievance prior to initiating this case, as is required for proper exhaustion. (See doc. no. 20-1, pp. 3-6.) The Court recognizes that in order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process, including the appeal of his formal grievance. See Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006). However, a prisoner may be deemed to have exhausted his remedies where he initiates the grievance process and the remaining steps in the administrative process are made unavailable to him, such as when he is told that he cannot appeal the denial of a greivance. See Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (exhaustion requirement satisfied where prisoner was told he did not have the right to appeal).

Here, Defendant has provided the formal grievance that she maintains Plaintiff failed to appeal. (Doc. No. 20, Ex. A.) Below the Warden's response to the grievance are three entries relating to Plaintiff's ability to appeal the grievance. (Id.) The first entry states "appealable," the second one states "not appealable," and the third one states "suspend pending internal investigation." (Id.) On Plaintiff's grievance response form, the box beside the third statement is checked, indicating that his right to appeal the denial of his grievance was suspended pending an internal investigation. (Id.) Curiously, the grievance form indicates that the investigation was concluded prior to the issuance of the grievance response, yet Defendant gives no indication that Plaintiff was ever told anything other than that his right to appeal was suspended pending an investigation. (Id.) Because the record is unclear

as to whether an appeal of the denial of his formal grievance was ever available to Plaintiff, there is insufficient information to determine whether Plaintiff has failed to exhaust his administrative remedies. In any event, the Court makes no definitive findings on the issue of exhaustion, as Defendant's entitlement to qualified immunity makes consideration of that issue unnecessary.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss (doc. no. 20) be **GRANTED**, that Plaintiff's amended complaint be **DISMISSED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**..

SO REPORTED and RECOMMENDED this 18th day of February, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE